UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLAUDIA ELIZABETH SERAFIN TRISTAN, CLAUDIA ALEJANDRA SAUCEDO SERAFIN, and MIGUEL ALEJANDRO SAUCEDO SERAFIN, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, PAM BONDI, and THOMAS C. ALBUS,[1] <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No. 4:25 CV 255 JMB ) ) ) ) ) ) ) |

**MEMORANDUM and ORDER**

Now pending before the Court is Defendants' Motion to Dismiss (Doc. 8). For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part without prejudice.**

**I.   Background**

In a Complaint filed on February 28, 2025, Plaintiffs seek a declaration that they are United States citizens pursuant to federal immigration law (Doc. 1).[2] Plaintiff Claudia Elizabeth Serafin Tristan (hereinafter Claudia Elizabeth) and her two children, Plaintiffs Claudia Alejandra Saucedo Serafin (hereinafter Claudia Alejandra) and Miguel Alejandro Saucedo Serafin (hereinafter Miguel

---

[1] On August 1, 2025, Thomas C. Albus was sworn in as the interim United States Attorney for the Eastern District of Missouri. Mr. Albus is hereby **SUBSTITUTED** for Sayler A. Fleming pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Complaint states that it was drafted by Steven P. Timmons, Claudia Elizabeth's brother-in-law, with Plaintiffs' permission. Mr. Timmons does not purport to be an attorney and instead identifies himself as a probation officer with a master's degree in criminology. Each of Plaintiffs have signed the pleadings in this case, thereby acknowledging their obligations pursuant to Federal Rule of Civil Procedure 11. Defendant points out that some of Plaintiffs' citations to case authorities are erroneous and not do refer to existing cases, e.g. "*Lazo v. Blinken*, No. 7:21-cv-00313, 2022 WL 1316223 (S.D. Tex. May 3, 2022)" does not exist (Doc. 11, p. 11), nor does "*Flores-Torres v. DHS*, 548 F.3d 1, 6 (1st Cir. 2008)" (Doc. 11, p. 7). Plaintiffs are warned that failure to provide citations to actual case authority in support of propositions of law or fact are a violation of Rule 11 and may result in sanctions.

Page **1** of **20**

Alejandro), allege that their United States citizenship derives from Esteban Oliva Serafin, a United States citizen and Claudia Elizabeth's father. Claudia Elizabeth claims that she was denied citizenship, most recently in January, 2025, in an arbitrary and capricious manner and in violation of § 301 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1401. The Complaint does not allege that Claudia Alejandra and Miguel Alejandro likewise applied for citizenship and were denied; however, they assert that they have a derivative claim of citizenship based on Claudia Elizabeth's (anticipated) successful claim of citizenship. Plaintiffs claim an entitlement to relief in this Court pursuant to 8 U.S.C. § 1503(a) and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, *et seq*. Defendants seek dismissal for lack of subject matter jurisdiction and for failure to state a claim.

Attached to the Complaint are copies of a variety of documents purporting to show Esteban Oliva Serafin's presence in the United States, in addition to Plaintiffs' family history, births, and relationships, some of which are written in Spanish. As set forth in the attachments to the Complaint, Plaintiffs were all born in Mexico and are all citizens of Mexico (Docs. 1-28, 1-32, 1-33, and 1-34). While Plaintiffs do not attach Claudia Elizabeth's recent application for a United States passport, Plaintiffs have attached a December 13, 2024 letter from the Consulate General of the United States of America in Monterrey, Mexico indicating that her March 27, 2024 application was rejected, and a passport cannot issue, because she failed to show that her father was physically present in the United States prior to her birth and for a period of at least 10 years (Doc. 1-26).

The Complaint does not state that Claudia Elizabeth filed any other claims of citizenship other than the March, 2024 application (Doc. 1, p. 9). Attached to Defendants' memorandum, however, are documents demonstrating that Claudia Elizabeth applied for a United States passport

prior to 2024.³ As to the first application,⁴ she was directed to provide more evidence in support of her application on October 22, 2014; the application was subsequently denied on February 10, 2015 (Doc. 9-1, pp. 3-4). As to a second September 11, 2018 application, she was again directed to provide more evidence and the application was ultimately denied on May 2, 2019 (Id. pp. 5-9). And, as indicated above, her third 2024 application likewise was denied. Neither of the later denials referenced Claudia Elizabeth's prior applications.

## II.   Standard

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Rule 12(b)(1) provides for dismissal based on lack of subject matter jurisdiction. Such motions can present a "facial" and/or a "factual" attack on the Court's jurisdiction. Where a defendant asserts a facial challenge to this Court's jurisdiction, one that relies on the averments made in a complaint, the arguments are analyzed under the same standard as a Rule 12(b)(6) motion. Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 914 (8th Cir. 2015). However, in a factual attack, where a defendant "challenges the veracity of the facts underpinning subject matter jurisdiction," the Court "considers matter outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (quotation marks and citations omitted). Defendants make a factual attack on this Court's subject matter jurisdiction. Accordingly, material outside of the pleadings, namely Claudia Elizabeth's prior applications for a United States passport and denials of the same, shall be

---

[3] In an attached certification, Larry W. Talbott, a Deputy Director with the Office of Information Management and Liaison within the Visa Office of the Bureau of Consular Affairs, United States Department of State, avers that the documents attached to the memorandum represent copies maintained by the Department of State related to Plaintiffs' attempts to seek citizenship and/or a visa to enter the United States. This Court takes judicial notice of these administrative files because they are integral to Plaintiffs' claims and their authenticity is not questioned. See Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).

[4] The date on the application is unreadable (Doc. 9-1, p. 1).

Page **3** of **20**

considered by the Court along with the fact that neither Claudia Alejandra nor Miguel Alejandro have applied for a United States passport or certificate of citizenship.

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a Rule 12(b)(6) (and a facial Rule 12(b)(1)) motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2). However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### III.   Discussion

The Fourteenth Amendment to the United States Constitution and Title 301 of the Immigration and Nationality Act of 1952 (INA) defines those persons who are United States citizens at birth. 8 U.S.C. § 1401; Sessions v. Morales-Santana, 582 U.S. 47 (2017). The statute

provides, in part, that a person who is born outside of the territorial limits of the United States, but who has one United States citizen parent who was physically present in the United States for a specified number of years, is a citizen at birth. Id. § 1401(g).[5] Such a person may seek a United States passport from a passport agency if they are residing in the United States, or an embassy or consulate if residing outside of the United States. See, e.g., 8 C.F.R. § 301.1. A person who is denied the rights or privileges of a national may seek a "judgment declaring him to be a national of the United States" under certain circumstances. 8 U.S.C. § 1503(a).[6] An action under that section must be: (1) by a person denied a right or privilege; (2) filed against "the head of such department or independent agency" that denied a right or privilege as a national; (2) filed "only within five years after the final administrative denial of such right or privilege"; and, (3) must be filed in the district court "in which such person resides or claims a residence." Id.

---

[5] In the Complaint, Plaintiff refers to §301(a)(7) of the INA. Due to renumbering of the statute, §301(a)(7) now is renumbered to § 301(g). See Immigration and Nationality Act, Amendment, Repeals, Pub. L. No. 95-432, 92 Stat. 1046 (1978). At the time of Claudia Elizabeth's birth, the residency requirement for her citizen father was 10 years, 5 years of which must have been after the age of 14. See Immigration and Nationality Act Amendments of 1986, Pub. L. No. 99-653, 100 Stat. 3655 (changing the 10 year residency requirement to 5 years).

[6] In full:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a).

As to all claims, Defendants first argue that the United States Department of State, Pam Bondi, and Thomas C. Albus should be dismissed as improper defendants and that Plaintiffs cannot assert a claim pursuant to the APA.

Plaintiffs[7] acknowledge that the only proper party-defendant in this action is Marco Rubio, the Secretary of State. Id. ("If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, . . . .").[8] Accordingly, the remaining Defendants, the United States Department of State, Pam Bondi, and Thomas C. Albus, are **DISMISSED without prejudice**.

The APA permits judicial review of an agency's actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA permits a court to compel agency action and/or put aside agency action that is deemed, in part, arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706. Importantly, review under the APA may not be possible when there is another specific statute that grants an adequate remedy. See Central Platte Natural Resources Dist. v. U.S. Dept. of Agriculture, 643 F.3d 1142, 1148-1149 (8th Cir. 2011) ("Congress did not mean for the APA's review procedures to duplicate existing review mechanisms."). In this case,

---

[7] Plaintiffs first take issue with Defendants' reference to Claudia Elizabeth as "mom" in their motion and briefs. Plaintiffs find that the moniker does not reflect the seriousness of their claims and may represent a form of bias. The Court does not ascribe a negative connotation or intent to Defendants' informal reference to Claudia Elizabeth and finds that Defendants are sufficiently aware of the gravity of Plaintiffs' claims.

[8] Title 28 U.S.C. § 2201(a) provides, in relevant part, for declaratory judgments:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

§ 1503(a) grants Plaintiffs an adequate remedy, the ability to file suit in district court to acknowledge citizenship. Under § 1503(a), this Court would make a *de novo* determination of whether Plaintiffs are United States citizens. See Vance v. Terrazas, 444 U.S. 252, 256 (1980). And, while § 1503(a) does not require an evaluation of the agency's determination, see Richards v. Sec'y of State, 752 F.2d 1413, 1417 (9th Cir. 1985), it provides an adequate remedy that would foreclose APA review.

In any event, Plaintiffs state that their reference to the APA is "contextual" and does not set forth a separate claim (Doc. 11, p. 7) ("Plaintiffs clarify that they are not raising the APA as an independent cause of action . . . . No separate claim or request for relief has been made under it."). Accordingly, to the extent that Plaintiffs may be asserting an APA claim, it is **DISMISSED without prejudice**.

A.  Claudia Elizabeth's claim (Count I)

Defendant next argues that this Court lacks subject matter jurisdiction over Claudia Elizabeth's claims because they are time-barred. Putting aside the argument that the time limit found in § 1503(a) is jurisdictional in nature, the five-year limitations period contained in the statute begins to run from the "first final administrative denial" of a claim of citizenship. See Gonzalez v. Limon, 926 F.3d 186, 189 (5th Cir. 2019); Whitehead v. Haig, 794 F.2d 115, 119 (3rd Cir. 1986); Chin Chuck Ming v. Dulles, 225 F.2d 849, 853 (9th Cir. 1955). This clock may be reset, however, if subsequent applications are qualitatively different; and, some courts have found that providing additional and new evidence can render an application different and can lead to a new five-year limitations period. See, e.g., Arthur-Price v. Blinken, 2022 WL 1004415 (N.D. Ill. 2022); but see Henry v. Quarantillo, 684 F.Supp.2d 298, 307-308 (E.D.N.Y. 2010) ("But there is no precedent to suggest that when a second 'final administrative denial' is based on the

presentation of new evidence, it is somehow qualitatively different than previous denials and thus begins anew the statute of limitations.").

As noted above, Claudia Elizabeth applied for a United States passport in October, 2014 and was directed on October 22, 2014 to provide more information.[9]  On February 10, 2015, Claudia Elizabeth's first application was denied for failure to establish the physical presence of her father in the United States for at least 10 years prior to her birth (Doc. 9-1, p. 4).  There is no discussion in the briefs whether Claudia Elizabeth administratively appealed or otherwise challenged that decision.[10]  As such, the decision on her first application became final on or about February 10, 2015 and the § 1503(a) clock would appear to run on that date.  In addition, it does not appear that Claudia Elizabeth's subsequent applications were "qualitatively different" than her first application: they all appear to be on the same form and while additional evidence may have been presented in subsequent applications, such evidence did not change the nature of her assertion that she is entitled to citizenship based on §301(g).  Plaintiffs filed suit on February 28, 2025, more than five years thereafter.  Accordingly, Defendant argues that Claudia Elizabeth's claim is time-barred.

In most cases, a statute of limitations defense is an affirmative defense that a Defendant must plead and prove, Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir 2008), and that is subject to equitable considerations.  Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. United States Corps of Engineers, 888 F.3d 906, 917 (8th Cir. 2018) ("Equitable tolling allows for an extension of the prescribed limitations period when the plaintiff, despite all due diligence, is unable to obtain

---

[9] In her response, Plaintiffs state that the application was made in 2015 without any citation to a record or pleading (Doc. 11, p. 3).

[10] Defendants have made no argument that this Court lacks jurisdiction because Plaintiffs may have failed to exhaust their administrative remedies.  See Flores v. Hartnett, 2022 WL 101978, *2-3 (5th Cir. 2022); Poole v. USCIS Pittsburgh Field Office, 2024 WL 3439777 (3rd Cir. 2024).

vital information bearing on the existence of his [or her] claim." (quotation marks and citation omitted)). Nonetheless, a complaint may be dismissed pursuant to Rule 12(b)(6) "if the complaint itself establishes that the claim is time-barred." Richardson v. Omaha School Disrict, 957 F.3d 869, 873 (8th Cir. 2020) (quotation marks and citation omitted).

Defendant argues, however, that the limitations period contained in § 1503(a) is jurisdictional, meaning that this matter must be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction if Plaintiffs filed suit outside of the limitations period, regardless of any equitable considerations. Id.; see T.L. ex. Rel. Ingram v. United States, 443 F.3d 956, 959 (8th Cir. 2006) (discussing whether the Federal Tort Claims Act's limitations period is jurisdictional in nature), abrogated on other grounds by United States v. Wong, 575 U.S. 402 (2015). When considering whether a statute of limitations is merely an affirmative defense subject to equitable tolling or a jurisdictional prerequisite to judicial review, this Court must look to congressional intent. United States v. Brockamp, 519 U.S. 347 (1997). In such cases,

> The Government may therefore attempt to establish, through evidence relating to a particular statute of limitations, that Congress opted to forbid equitable tolling.
> One way to meet that burden—and the way the Government pursues here—is to show that Congress made the time bar at issue jurisdictional. When that is so, a litigant's failure to comply with the bar deprives a court of all authority to hear a case. Hence, a court must enforce the limitation even if the other party has waived any timeliness objection. And, more crucially here, a court must do so even if equitable considerations would support extending the prescribed time period.
> Given those harsh consequences, the Government must clear a high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much. That does not mean Congress must incant magic words. But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.
> And in applying that clear statement rule, we have made plain that most time bars are nonjurisdictional.

Wong, 575 U.S. at 408–09 (quotation marks and omitted); see also Boechler v. Commissioner, 596 U.S. 199, 203 (2022); Harrow v. Department of Defense, 601 U.S. 480, 483-485 (2024); Riley v. Bondi 606 U.S. ___, 145 S.Ct. 2190, 2201 (2025) ("Because jurisdictional rules have a unique capacity to disrupt the orderly adjudication of disputes, we are reluctant to label a rule 'jurisdictional' unless Congress has clearly signaled that the rule is meant to have that status.").

Defendant seeks to shortcut this analysis of Congressional intent by relying on Gonzalez v. Limon, 926 F.3d 186 (5th Cir. 2019), and Sanchez v. Rubio, 2025 WL 289229 (S.D. Tx. 2025), which in turn relies on Gonzalez and Flores v. Pompeo, 936 F.3d 273 (5th Cir. 2019).[11] Sanchez, 2025 WL 289229 at *5 ("Taken together, Gonzalez and Flores establish that the final clause in Section 1503(a) applies to both the geographic and temporal components of that sentence, and that it is jurisdictional."). In Gonzalez, the plaintiff was issued a certificate of citizenship in 1984; but, that certificate was cancelled in 2006 (because plaintiff was not the legitimate daughter of a United States citizen) and plaintiff filed a motion to reconsider (asserting that she never received a pretermination letter sent in 1991 and that, in any event, she was legitimated according to relevant Mexican law). Id. 926 F.3d at 187. That motion was dismissed and plaintiff did not appeal. In 2014, the plaintiff filed a new motion for reconsideration asserting a new basis for reconsideration (that her father legitimated her through a sworn statement of paternity). That motion was dismissed

---

[11] In Flores, the Fifth Circuit Court of Appeals Court stated that:

> The parties disagree over whether the residence requirement in § 1503(a) is a jurisdictional or venue provision. We conclude it is jurisdictional. A limitation or condition on the scope of a statute is jurisdictional if Congress 'clearly states' that it is jurisdictional. Arbaugh v. Y&H Corp., 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). To discern whether a statutory condition is jurisdictional, courts 'look[ ] to the condition's text, context, and relevant historical treatment.' Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393–95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Congress clearly stated that § 1503(a)'s residence requirement is jurisdictional by appending the clause 'jurisdiction over such officials in such cases is conferred upon those courts.'

Id., 936 F.3d at 276.

in 2014 and plaintiff's appeals efforts were denied in 2016. She filed suit in 2017 related to the 2016 dismissal of her (second) motion to reconsider the cancellation of her certificate of citizenship pursuant to § 1503(a).

The Fifth Circuit explicitly considered whether "there is jurisdiction over Gonzalez's claim" based on the accrual of her claim and exhaustion of administrative remedies. Id. 188. Its holding, however, was narrower:

> While the text is silent regarding duplicative denials, in defining a limitations period, Congress expressed its interest in finality. Implicitly authorizing a series of duplicative claims would frustrate that interest. Section 1503(a)'s reference to "the final administrative denial" means the first final administrative denial.

Id., 926 F.3d at 190. The Gonzalez court relegated exhaustion to a footnote. Id. at 188 n.7 ("Additionally, a plaintiff must exhaust administrative remedies."). As to the limitations period, the Court briefly stated that the plaintiff's action "must comply with further jurisdictional requirements," namely, the five year limitations period. Id. 188. Thus, the Gonzalez court was more concerned with when a claim accrued, after the first final decision, versus whether the limitations period established a jurisdictional bar.

After briefing in this matter, the Fifth Circuit Court of Appeals disavowed the holding in Gonzalez related to the jurisdictional nature of the limitations clause in § 1503(a). In Villegas v. Noem, 149 F.4th 554 (5th Cir. 2025), the Court held that "§1503(a)'s procedural time bar is nonjursidictional, and Villegas's suit was timely." Id. at 559. Importantly, the Villegas court found that Gonzalez, and by-and-by Flores, failed to conduct the analysis required by the Supreme Court in determining whether § 1503(a)'s limitations period was jurisdictional, and instead merely made such a pronouncement in dicta that is nonbinding and non-precedential. Villegas, 149 F.4th at 563-564 and n.4. The Court then conducted a "clear statement test" to determine whether Congress intended for the limitations period in § 1503(a) is jurisdictional. See Harrow, 601 U.S.

at 489. The Court found that the text of § 1503(a), and in particular the last sentence, did not clearly establish a jurisdictional bar. Villegas, 149 F.4th at 565. The Court further found that a supposed conditional waiver of sovereign immunity did not convert the limitations period in § 1503(a) to a jurisdictional bar nor did the proximity of the word "jurisdiction" in the sentence containing the limitations clause. Id. 565-566 (citing Boechler, P.C. v. Commissioner of Internal Revenue, 596 U.S. 199, 204-206 (2022). In light of the dearth of binding authority from the Eighth Circuit Court of Appeals, this Court finds the Villegas reasoning persuasive. There is no showing that Congress intended § 1503(a) to create a jurisdictional bar as to the statute of limitations. Neither the text of the statute, nor binding (or even persuasive) case authority, nor any other authority that would touch upon Congressional intent and be relevant, demonstrates clearly that Congress intended the limitations period in §1503(a) to be a jurisdictional. See, e.g., Riley, 145 S. Ct. at 2202 ("We start with the text of the statute. Section 1252(b)(1) provides that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." This language tells *aliens* what they must do if they want judicial review, but it provides no directives to *courts*. It makes no reference to jurisdiction and lacks any language demarcat[ing] a court's power. (quotation marks and citation omitted; emphasis in original)); Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 501-502 (1982) ("However, the initial question whether exhaustion is required should be answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent."). As such, the limitations period is merely a claims processing rule and Defendant is obligated to affirmatively show that Plaintiffs failed to file within the limitations period.

Of course, Defendant rests on Rule 12(b)(1) and does not argue that Claudia Elizabeth failed to state a claim pursuant to Rule 12(b)(6). Because there is no argument, the Court will not

speculate or offer an opinion on whether Defendant has timely raised a statute of limitations defense and whether Claudia Elizabeth's claim may be entitled to any equitable tolling.

Accordingly, Count I cannot be dismissed pursuant to Rule 12(b)(1), at this time.

B.   Claudia Alejandra's and Miguel Alejandro's claim

In Count II, Claudia Alejandra and Miguel Alejandro likewise claim that they are entitled to a declaration that they are United States citizens based on Claudia Elizabeth's (alleged) citizenship and Esteban Oliva Serafin's citizenship (Doc. 1, p. 10). Defendant argues that they lack standing and that they fail to state a derivative or other claim of citizenship.

In any federal case, whether a party has Article III standing to sue is a threshold question that must be answered. Iowa v. Wright, ___ F.4th ___, 2025 WL 2554549, * 6 (8th Cir. 2025).[12] "For standing, a petitioner must show it suffered an injury in fact, fairly traceable to the challenged action, and likely redressable by a favorable decision of the court." Id. An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. (quotation marks and citation omitted); Lujan v. Defenders of Wildlife, 504 U.S 555, 560 (1992). Plaintiffs bear the burden of showing that they have standing to sue. Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Neither Claudia Alejandra nor Miguel Alejandro have set forth a justiciable controversy. There is no allegation that they sought United States citizenship and that they were denied the privilege; thus, these Plaintiff have not shown an injury in fact. See Nakka v. United States Citizenship and Immigration Services, 111 F.4th 995, 1011 n.18 (9th Cir. 2024) (stating that the possible revocation of an immigration status is "too speculative" to confer standing."); Sok v. Mayorkas, 691 F.Supp.3d 1276, 1279 (W.D. WA. 2023) (finding that a person who is neither the petitioner nor a beneficiary as to an immigration

---

[12] Article III, section 2 of the United States Constitution limits the Court's jurisdiction to "Cases" and "Controversies."

petition, notwithstanding his relationship to the petitioner, has standing to sue).  Nor is there any allegation, to the extent that they are seeking injunctive relief, that there is a substantial risk that they are likely to suffer a future, impending injury.  In re SuperValu, Inc., 870 F.3d 763, 769 (8th Cir. 2017).  Indeed, "[a]llegations of *possible* future injury are not sufficient."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).

Even if Claudia Alejandra or Miguel Alejandro could show Article III standing, they have nonetheless failed to show statutory standing, either through § 1401(g), § 1503(a) or even the APA.  See Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 934 (8th Cir. 2012).  That is, they cannot state a claim pursuant to § 1401(g) because they have not plausibly alleged that they have a United States citizen parent who currently meets the residency requirements.  They cannot state a § 1503(a) claim because it requires the denial of the citizenship privilege which has not been alleged in this matter.  Moreover, there is no showing of any agency action that could invoke the APA.

To support the standing claim, Claudia Alejandra and Miguel Alejandro argue that applying for citizenship would be futile in light of Claudia Elizabeth's thrice denied applications, that their claims are inextricably intertwined with hers such that they should be determined together, and that equity requires the claims be considered together.  Article III standing to sue can be found even if a plaintiff fails "to take steps to satisfy a precondition if the attempt would have been futile."  Pucket v. Hot Springs School Dist. No. 23-2, 526 F.3d 1151, 1162 (8th Cir. 2008); Browne v. Reynolds, ___ F.4th ___, 2025 WL 2503148, *2 (8th Cir. 2025).  Thus, in the context of an equal protection claim alleging discrimination, "a nonapplicant can be the victim of unlawful discrimination entitled to make-whole relief when an application would have been a useless act serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to

him." International Broth. Of Teamsters v. United States, 431 U.S. 324, 367 (1977). Typically, futility is found when particular groups of plaintiffs are foreclosed from relief due to particular polices or laws. See, e.g., Browne, 2025 WL 2503148, * 2 (involving a plaintiff who was foreclosed from obtaining a handgun through operation of state law he claims is unconstitutional). And, there is at least some showing that a person would have applied absent the barrier. See, e.g., Dalton v. JJSC Properties, LLC, 967 F.3d 909, 913 (8th Cir. 2020); Smith v. Golden China of Red Wing, Inc., 987 F.3d 1205, 1209 (8th Cir. 2021) ("In the ADA context, plaintiffs need not engage in the futile gesture of visiting a building containing known barriers that the owner has no intention of remedying, but they must at least prove knowledge of the barriers *and that they would visit the building in the imminent future but for those barriers*." (quotation marks, citations, and editing marks omitted; emphasis in the original)).[13]

The obvious problem with Plaintiffs' arguments is that Claudia Alejandra and Miguel Alejandro are not wholly foreclosed from applying for citizenship by operation of any law nor is there any allegation in their complaint that they even intend to apply for citizenship but for a barrier. As such, there is no showing of imminent injury, merely a conjectural one – that if Claudia Elizabeth is ultimately denied citizenship their possible applications may also be denied. Whitmore v Arkansas, 495 U.S. 149, (1990) ("The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." (cleaned up)). The second obvious problem is that even if they somehow do have Article III standing, they lack statutory standing as set forth above. Plaintiffs have presented no case authority that would support the proposition that they are entitled to bypass statutory and regulatory immigration schemes that contain limitations periods,

---

[13] Plaintiffs appear to have randomly cited to Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission, 945 F.3d 206 (5th Cir. 2019), to support their futility argument. That case does not concern Article III standing.

exhaustion requirements, and physical presence requirements based on their desire to have a court adjudicate their rights instead of the federal agencies tasked with making those determinations in the first instance.[14]

Plaintiffs next rely on Hughes v. Ashcroft, 255 F.3d 752 (9th Cir. 2001), and claim that it recognizes the "derivative claims of children tied to a parent's naturalization" (Doc. 11, p. 5).[15] Hughes, which concerned the removal proceedings of a convicted felon, did not concern a "derivative" claim of citizenship – rather, the plaintiff claimed that he was a "national" of the United States because of the length of his residence, his lack of allegiance to the country of his birth, his allegiance to the United States, and that his birth country did not recognize him as a citizen. Id. 255 F.3d at 756. None of those facts are alleged here and the removal statutes at issue in Hughes are not relevant to these proceedings. In any event, Hughes stated, in dicta, that "[i]t appears that, to qualify as a national, a noncitizen resident of the United States must have applied for citizenship" which has not been alleged in this case. Id. at 756. Plaintiffs' remaining arguments are without merit – there is no case authority to support a finding that standing can be established through equitable considerations of efficiency and economy. And to the extent that Plaintiffs may allege citizenship through some other avenue, i.e. 8 U.S.C. § 1433 (permitting a parent to apply for citizenship for their minor child), the Court will not guess at what those avenues may be without allegations in a pleading stating as much.

---

[14] Plaintiffs state that "[i]f the Court rules in [Claudia Elizabeth's] favor, [Claudia Alejandra's and Miguel Alejandro's] status follows automatically" (Doc. 15, p. 4). That is not accurate. They would presumably still be required to show Claudia Elizabeth's necessary residency in order to acquire citizenship via § 1401(g).

[15] In their sur-reply, Plaintiff's also rely on Flores-Villar v. United States, 564 U.S. 210 (2011) (mem.). That citation refers to an affirmance by a divided court and contains no reasoning – the case certainly does not "recogniz[e] derivative impact of parental citizenship claims under § 301" as set forth in Plaintiffs' brief (Doc. 15, p. 4). Instead, the Ninth Circuit case that was affirmed, United States v. Flores-Villar, 536 F.3d 990 (9th Cir. 2008), noted that a child cannot assert the constitutional rights of a parent and § 1401(g) "provides no textual basis for imputing residency of a grandparent." Id. at 998-999.

Accordingly, Claudia Alejandra's and Miguel Alejandro's claims in Count II are **DISMISSED without prejudice** pursuant to Rule 12(b)(1) for lack of standing.

C.  Venue

Normally, the Court would address venue before getting the merits of the claims. However, the manner in which Defendant makes this argument necessitated a different approach. In a footnote, Defendant states that the Court need not address venue because of their jurisdictional arguments (Doc. 9, p. 9 n.4). However, in light of the foregoing, venue should now be addressed.

Section 1503(a) provides that for a "person who is within the United States," an action "shall be filed in the district court of the United States for the district in which such person resides or claims a residence . . . ."[16] In their Complaint, Plaintiffs state that venue is appropriate in this Court because "substantial parts of the events giving rise to this claim occurred in this jurisdiction and [Plaintiffs] currently reside in St. Louis, Missouri with Claudia [Elizabeth's] sister and brother-in-law . . . ." (Doc. 1, p. 2). They further state that they are residing in St. Louis "in order to pursue this present case in federal court." Id. Defendant points out that Claudia Elizabeth's most recent passport application (2024) lists a mailing address in Piedras Negras, Mexico; she received mail there recently in December 2024, three months before filing this lawsuit (Docs. 1-26 and 9-1, p. 10). Both Claudia Alejandra and Miguel Alejandro listed Piedras Negras, Mexico as their home address and that they are students at a Mexican university in their 2017 and 2020, respectively, visa applications (Doc. 9-1, pp. 23, 24, 30, and 31).

Certainly, Plaintiffs are "within the United States" and must file suit where they "reside" or "claim a residence" – this is regardless of whether they complied with § 1503(b). Defendant

---

[16] For a "person who is not within the United States," the rules are more complicated with an alien ultimately capable of filing suit as provided by § 1503(a) if they have been granted entry into the United States; or if denied entry, in "a court of competent jurisdiction in habeas corpus and not otherwise."  8 U.S.C. § 1503(b) – (c).

relies on Villafranca v. Pompeo, 486 F.Supp.3d 1078, (S.D. Tex. 2020), for the proposition that "resides" in § 1503(a) equates to the definition of "residence" as set forth in the Immigration and Nationality Act: "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). In addition, Villafranca defined "claims a residence" as a "location" "that she claimed (asserted or stated) . . . is in fact her general place of abode – i.e. her principal, actual dwelling place – and must have done so in a manner subject to possible contradiction." Id. 486 F.Supp.3d at 1085. Defendant also urges this Court to consider factors such as whether Plaintiffs own a home here and where they work, indicia that their residence in this district is not a "mere physical presence." Villafranca, 486 F.Supp.3d at 1085 (quotation marks and citation omitted).

Defendant's arguments are undeveloped. Unlike in Villafranca, which is not controlling authority, there is no evidence supporting or disclaiming residence. Id. 1086 ("The focus when considering whether a plaintiff 'claims a residence' is the strength of the evidence showing that the plaintiff has asserted that a location within the judicial district is her principal, actual dwelling place."). Claudia Elizabeth's mailing address may just be that, a place where she receives mail; and, Claudia Alejandra's and Miguel Alejandro's visa applications appear to be at least 5 years old. Further, there is no suggestion that if Plaintiffs' "primary residence" is in Mexico, they are foreclosed from claiming a residence in the United States. Finally, there is no indication of where venue would be appropriate if not in this District. Defendant's reply brief makes no substantive argument as to venue.

For their part, Plaintiffs rely on a non-existent case, Escobar v. INS,[17] for the proposition that "residence is defined by intent to remain, not legal status," and on other cases that also do not

---

[17] The citation listed is 935 F.2d 955 (8th Cir. 1991) which is in fact the citation to United States v. Lee, a different and unrelated Eighth Circuit case.

Page **18** of **20**

exist or that do not stand for the propositions asserted (Doc. 11, p. 7). Given the lack of any real or developed argument, this Court cannot find, on these briefs, that venue is improper. However, Defendant is granted leave to refile and provide a more robust argument and/or evidence as to why venue does not lie in this district. In any response, Plaintiffs shall be sure to cite to specific (actual) case authority and evidence supporting their position on venue.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 8) is **GRANTED in part** and **DENIED in part without prejudice**.

**IT IS HEREBY ORDERED** that Count II of the Complaint along with Plaintiffs Claudia Alejandra Saucedo Serafin and Miguel Alejandro Saucedo Serafin are **DISMISSED without prejudice** for lack of standing;

**IT IS FURTHER ORDERED** that Plaintiffs' APA claim is **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** Thomas C. Albus is hereby **SUBSTITUTED** for Defendant Sayler A. Fleming;

**IT IS FURTHER ORDERED** that Defendants United States Department of State, Pam Bondi, and Thomas C. Albus are **DISMISSED without prejudice** as improper defendants;

**IT IS FURTHER ORDERED** that Defendant is **GRANTED** leave to refile its motion to dismiss for lack of venue;

Finally, the Court notes that mail sent to Claudia Elizabeth at "1200 McCausland, St. Louis, MO 63117" was returned to the Court as undeliverable with no forwarding information (Doc. 16). Local Rule 2.06(B) requires self-represented parties to inform the Court and opposing parties of their current address. Under these circumstances, Claudia Elizabeth was required to "notify the

Court of the change of address within thirty (30) days" and that failure to do so means that the Court may dismiss this lawsuit without further notice. However, because it is unclear whether the Court's mail was directed to Plaintiffs at 1200 McCausland **Avenue** (as opposed to **Court**), and Defendant has not indicated that pleadings he has served have been returned as undeliverable, the Court will not entertain dismissal at this time. Accordingly, the Clerk of Court is **DIRECTED** to mail this Memorandum and Order to Plaintiffs at "1200 McCausland Avenue" and to the email address contained in the docket. Plaintiffs are nonetheless **DIRECTED** to file a notice with the Court setting forth their address, in full, and telephone number(s) within 10 days of the date of this Memorandum and Order. Failure to do so may result in dismissal of this lawsuit.

Dated this 16th day of October, 2025

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE