**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLAUDIA ELIZABETH SERAFIN TRISTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-cv-00255-SEP |
| | ) | |
| MARCO RUBIO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment, Doc. [28]. For the reasons set forth below, the motion is granted.

**FACTS AND BACKGROUND**[1]

Plaintiff was born on August 1, 1975, in Piedras Negras, Coahuila, Mexico, and is a Mexican citizen. Doc. [30] ¶¶ 1-2. Plaintiff's father entered the United States on July 27, 1965, and was issued a Certificate of Citizenship of the United States on February 28, 1966. *Id.* ¶¶ 4-5. Plaintiff applied for a United States passport on October 22, 2014, alleging that she derived United States citizenship from her father's citizenship and presence in the United States during the decade prior to her birth. *Id.* ¶ 9. In response to her application, the United States Consulate General at Nuevo Laredo, Mexico notified Plaintiff that she needed to present more evidence of her father's physical presence in the United States, such as "school, employment, or military records" for "each period or place of residence" in the United States. Doc. [30-1] at 20. On February 10, 2015, the U.S. Consulate denied Plaintiff's application for a passport in a letter stating, "it does not appear that you have a claim to U.S. citizenship due to the fact that you failed to establish that your USC father was physically present in the U.S. for at least ten years prior to your birth. Therefore, your application is denied." Doc. [30] ¶¶ 11-12.

On September 11, 2018, Plaintiff again applied for a U.S. Passport, and on May 2, 2019, the U.S. Consulate again denied the application, stating, "it does not appear that you have a claim to U.S. citizenship because you have not provided sufficient evidence of your U.S. citizen

---

[1] Except as otherwise noted, the facts are drawn from Defendant's Statement of Uncontroverted Material Facts, Doc. [30], and exhibits attached thereto. The facts in this section are undisputed by Plaintiff.

parent's physical presence in the United States prior to your birth." *Id.* ¶¶ 13, 16-17. On March 27, 2024, Plaintiff applied a third time for a U.S. Passport, which was denied in a December 13, 2024, letter from the U.S. Consulate stating, "we found that you did not present sufficient evidence to prove your U.S. citizen parent's physical presence in the United States prior to your birth as required by law." *Id.* ¶¶ 18, 23-24.

On February 28, 2025, Plaintiff filed this lawsuit, pursuant to 8 U.S.C. § 1503(a), seeking a declaration that she is a United States citizen. Doc. [1] at 1.[2] Plaintiff alleges that she derives U.S. citizenship from her citizen father, Esteban Oliva Serafin, under Section 301(g)[3] of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1401(g), and that the United States Department of State has improperly denied her a passport. *Id.* Section 301(g) provides that a person who is born outside of the territorial limits of the United States, but who has one United States citizen parent who was physically present in the United States for a specified number of years prior to their birth—here, 10 years—is a citizen at birth. 8 U.S.C. § 1401(g). Such a person may seek a United States passport from an embassy or consulate if residing outside of the United States. *See* 8 C.F.R. § 301.1.

Defendant moves for summary judgment, arguing that Plaintiff's claim is time-barred. *See* Doc. [28]. The Government also argues that, if it were timely, Plaintiff's claim would fail on its merits, and that she does not meet the residency requirements of 8 U.S.C. § 1503(a) because she does not reside in the Eastern District of Missouri. *See* Doc. [29] at 9, 12. Because the Court agrees that Plaintiff's lawsuit is untimely, it does not address the Government's alternative arguments for summary judgment.

---

[2] On October 16, 2025, the Court dismissed other parties and claims when the case was pending before Magistrate Judge John M. Bodenhausen. *See* Doc. [17]. The case was then transferred to the undersigned due to lack of consent by all parties to magistrate judge jurisdiction. *See* Docs. [32], [34]. At issue here is only the remaining claim in Count I asserted by Claudia Elizabeth Serafin Tristan.

[3] Plaintiff cites to § 301(a)(7) of the INA. Doc. [1] at 1. Due to renumbering of the statute, § 301(a)(7) is now § 301(g). *See* Immigration and Nationality Act of 1952, Pub. L. No. 95-432, § 301(a)(7), 92 Stat. 1046 (1978) (current version § 301(g)). At the time of Plaintiff's birth, the residency requirement for her citizen father was 10 years, of which five had to be after the age of 14. *See* Immigration and Nationality Act Amendments of 1986, Pub. L. No. 99-653, 100 Stat. 3655 (changing the 10-year residency requirement to 5 years).

## LEGAL STANDARD

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986)).

## DISCUSSION

### I. <u>Plaintiff's claim is time-barred unless equitable tolling applies.</u>

Under 8 U.S.C. § 1503(a), "a person who is denied the rights or privileges of a national," such as being issued a passport, may seek a "judgment declaring [her] to be a national of the United States" under certain circumstances. 8 U.S.C. § 1503(a). An action under that section

must be: (1) by a person denied a right or privilege; (2) filed against "the head of such department or independent agency" as denied a right or privilege as a national; (3) filed "within five years after the final administrative denial of such right or privilege"; and (4) filed in the district court "in which such person resides or claims a residence." *Id.* Defendant argues that Plaintiff's Section 1503(a) claim is time-barred because the five-year limitations period ran from the date of denial of her first passport application in 2015, and so her lawsuit was filed several years too late. *See* Doc. [29] at 3.

An action under 8 U.S.C. § 1503(a) must be filed "within five years after the final administrative denial" of a claim of citizenship. 8 U.S.C. § 1503(a). And the five-year limitations period contained in the statute begins to run from the "*first* final administrative denial" of a claim of citizenship. *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019) (emphasis added). Otherwise, an individual could file "a series of duplicative claims" to expand the limitations period, undermining Congress's "expressed interest in finality." *Id.* at 190; *see also Icaza v. Shultz*, 656 F. Supp. 819, 823 (D. D.C. Feb. 19, 1987) (it would be "illogical to commence the running of the limitations period from the time in the latest in a series of passport applications," since to do so would render the § 1503(a) limitations period void of meaning). Here, the first final administrative denial was issued on February 10, 2015, yet this action was not filed until February 28, 2025, outside the five-year statute of limitations. Doc. [30] ¶¶ 11-12.

Some courts have recognized a limited exception to this rule, allowing the limitations clock to restart upon a subsequent administrative denial of a claim of citizenship where the later application was "qualitatively different" from the first, usually because there had been an intervening determination that the plaintiff was a United States citizen or national. *See, e.g., Mendoza v. Dep't of Homeland Sec.*, 2022 WL 1744649, at *5 (D.N.J. May 27, 2022) ("[I]t is possible for a subsequent application to be 'qualitatively different' if the applicant locates in the interim significant evidence (or, *a fortiori*, an administrative ruling) that compels a finding of citizenship."); *Villarreal Salinas v. Limon*, 549 F. Supp. 3d 624, 630 (S.D. Tex. 2021) (restarting the statute of limitations clock where, after an initial passport denial, an immigration court found that the plaintiff was "clearly and beyond a doubt" born in the United States); *but see Henry v. Quarantillo*, 684 F. Supp. 2d 298, 307-08 (E.D.N.Y. 2010) ("[T]here is no precedent to suggest that when a second 'final administrative denial' is based on the presentation of new evidence, it

is somehow qualitatively different than previous denials and thus begins anew the statute of limitations.").

Here, Plaintiff does not argue that her successive applications were qualitatively different than the first, and nothing in the record suggests that the exception should apply. There has been no intervening positive determination of citizenship or similar occurrence in the periods between Plaintiff's repeated applications and thus, no qualitative difference in circumstance that could restart the five-year period. And, as this Court has already noted, "it does not appear that [her] subsequent applications were 'qualitatively different' than her first application: they all appear to be on the same form and while additional evidence may have been presented in subsequent applications, such evidence did not change the nature of her assertion that she is entitled to citizenship based on § 301(g)." Doc. [17] at 8. Plaintiff submitted her first application for a passport on October 22, 2014, and that application was denied on February 10, 2015, at which point the statute of limitations began running. Doc. [30] ¶¶ 11-12. Plaintiff filed suit on February 28, 2025, well over five years after her first final administrative denial. Accordingly, Plaintiff's claim is time-barred unless she can demonstrate that equitable tolling applies.

**II. <u>Plaintiff has not carried her burden of establishing that equitable tolling applies.</u>**

"The purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties." *Dixon v. Edward D. Jones & Co., L.P.*, 2022 WL 4245423, at *5 (E.D. Mo. Sept. 15, 2022) (quoting *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006)). "The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." *Id.* (quoting *Pecoraro*, 435 F.3d at 875). "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling 'is an exception to the rule, and should therefore be used only in exceptional circumstances.'" *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002) (quoting *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995)); *see also Fair v. Commc'ns Unlimited, Inc.*, 2019 WL 4695942, at *2 (E.D. Mo. Sept. 26, 2019) ("Equitable tolling is a 'limited and infrequent form of relief.'") (quoting *Smithrud v. St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))); *Pecoraro*, 435 F.3d at 875 ("Courts generally require strict compliance with a statute of limitations and rarely invoke doctrines such as equitable tolling to alleviate a plaintiff from a loss of his right to assert a claim.") (citation omitted); *Jenkins v. Mabus*, 646 F.3d 1023, 1028-29 (8th

Cir. 2011) ("The doctrine of equitable tolling does not apply to 'garden variety' claims of excusable neglect, and should be invoked only in exceptional circumstances truly beyond the plaintiff's control.") (citation omitted).

Equitable tolling allows for an extension of the prescribed limitations period "when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his [or her] claim." *Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. United States Corps of Engineers,* 888 F.3d 906, 917 (8th Cir. 2018). To qualify for the remedy of equitable tolling, a litigant must show: "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Pace*, 544 U.S. at 418. "Extraordinary circumstances are generally limited to those 'truly beyond the control' of the party seeking to toll a deadline." *Capiz-Fabian v. Barr*, 933 F.3d 1015, 1018 (8th Cir. 2019) (quoting *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989)). The party that is claiming equitable tolling bears the burden of establishing its application. *Wollman v. Gross*, 637 F.2d 544, 549 (8th Cir. 1980), cert. denied, 454 U.S. 893 (1981).

Plaintiff appears to believe it is Defendant's burden to prove that equitable tolling does *not* apply to her claim. In her memorandum in opposition to Defendant's motion, she asserts that Defendant bears the burden of "negating equitable tolling or related equitable doctrines at summary judgment." Doc. [31] at 3. On the contrary, as "[t]he party who is claiming the benefit of an exception to the operation of a statute of limitations," it is Plaintiff's burden to show that she is entitled to equitable tolling. *Wollman*, 637 F.2d at 549.

Plaintiff cites to *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008), and *Sisseton-Wahpeton*, 888 F.3d at 917, to support her assertion that Defendant bears the burden of proving equitable tolling does *not* apply. *Id*. at 3. Neither case says anything of the sort. Rather, *Jessie* analyzes whether mental disability supports a plaintiff's claim for equitable tolling, 516 F.3d at 714, and *Sisseton-Wahpeton* merely articulates the standard that a plaintiff must meet in order to demonstrate entitlement to equitable tolling, 888 F.3d at 917-18.

Whether Plaintiff knows it is her burden to show that equitable tolling applies to her claim has no bearing on the Court's analysis. "A *pro se* litigant's misunderstanding" of the relevant law concerning limitations periods "does not justify equitable tolling." *United States v. Mendez*, 860 F.3d 1147, 1151 (8th Cir. 2017) (citing *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004)); *see also Smith v. Hammer & Steel, Inc.*, 2023 WL 3200294, at *3 (E.D. Mo. May 2,

2023) ("[I]t is well settled that ignorance of the law alone is not sufficient to warrant equitable tolling.") (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

Plaintiff also argues that equitable tolling may be applicable to her claim because the government has purportedly concealed from her the true basis for denying her application for a passport. *See* Doc. [31] at 4. Plaintiff points to a letter from the U.S. Consulate addressed to United States Senator Roy Blunt, dated December 4, 2018, which appears to have been written in response to the Senator's inquiry regarding Plaintiff's passport application. *Id.*; *see also* Doc. [30-2] at 17. The letter indicates that Plaintiff was informed that she needed to present additional evidence of her father's physical presence in the United States prior to her birth. *Id.* It also notes that her application included a copy of her parents' marriage certificate from Neuvo Leon, Mexico, signed on April 8, 1970, which appeared to contradict Plaintiff's assertion that her father never left the United States after entering in 1965. *Id.* Plaintiff asserts that she first learned of this letter after Defendant filed its Motion for Summary Judgment, when it was attached as an exhibit to Defendant's statement of material facts, Doc. [30-2] at 17. *Id.* Plaintiff argues that the marriage certificate does not prove that her father left the country to attend a wedding ceremony in Mexico, and had she known that was the reason her application was denied, she could have refuted the inference that he had travelled outside the United States in 1970. *Id.* Though it is not entirely clear, Plaintiff appears to be suggesting that, because she did not have enough information about precisely how her rights may have been violated in time to bring a timely claim, equitable tolling should apply to excuse her late filing. *Id.*

The Court is not persuaded. Generally, a claim accrues and the statute of limitations begins to run on the date a person realizes she has been injured, not the date that she understands precisely how her rights have been violated. *See Dring*, 58 F.3d at 1329-30. And for equitable tolling to apply, a plaintiff must show that she has been diligently pursuing her rights after the date her claim accrued. As explained in *Sisseton-Wahpeton*, a plaintiff is entitled to equitable tolling only if she shows:

> (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstances stood in her way and prevented timely filing. A plaintiff need not be *certain* that his or her rights have been violated. If a plaintiff were entitled to have all the time she needed to be *certain* her rights had been violated, the statute of limitations would never run. A court therefore asks

> whether a reasonable person in the plaintiff's situation would be expected to know about the violation of their legal rights.

888 F.3d at 917-918 (emphasis in original) (citation modified).

Here, Plaintiff claims that Defendant improperly denied her passport application, thus denying her the rights and privileges of a national. She asserts that she is entitled to a U.S. Passport, and she unquestionably knew that she had been denied one no later than February 10, 2015, when the U.S. Consulate denied her initial application. It does not matter that she may not have known every piece of evidence relied upon by the consulate in denying her application.[4] It is enough that she knew her application had been denied.

Plaintiff has presented no evidence that she was diligently pursuing her right to file a lawsuit during the five years following her first final administrative denial, or that any "extraordinary circumstance" prevented her from timely filing. Nor does she describe any "vital information" bearing on the existence of her claim that she was unable to obtain prior to the expiration of the statute of limitations. Because Plaintiff did not bring this action until February 28, 2025, well outside the five-year statute of limitations, and she has not shown that she is eligible for equitable tolling, her claim is time-barred and Defendant is entitled to summary judgment on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [28] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 28th day of September, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

[4] The argument is further undermined by the fact that Plaintiff brought this action well before she became aware of the letter to Senator Blunt, belying the notion that she did not have enough information to bring a timely claim until she read the letter discussing her father's Mexican marriage certificate.